WILLIAM CHARLES TANENBAUM (CAL. BAR NO. 305030)
 tanenbaum@tanenbaumlegal.com
9701 Wilshire Blvd., #1000
Beverly Hills, CA 90212
Telephone: 310.628.0989
Facsimile: 310.859.1960

*Attorneys for Plaintiffs*
ZACH MOTION PICTURES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALFORNIA

| | |
|---|---|
| ZACH MOTION PICTURES, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BRIDGESTONE MULTIMEDIA GROUP, LLC; and DOES 1 through 20, inclusive,<br>Defendants. | CASE NO.:  2:23-cv-6360<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501 AND § 1202**<br><br><br><br><br><br>**REQUEST FOR JURY TRIAL** |

Plaintiffs ZACH MOTION PICTURES, INC. ("Plaintiff" or "Zach Motion Pictures") by and through its attorneys, for their Complaint against Defendant BRIDGESTONE MULTIMEDIA GROUP, LLC ("Defendant" or "Bridgestone") herein allege as follows:

///

///

///

-1-

**COMPLAINT**

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action seeking injunctive and monetary relief for Defendant's infringements of Plaintiff's federally copyrighted films (collectively "Copyrighted Works"):

a.   "The Sin of Adam and Eve," authored by Producciones Zacarias, S.A., registration number PA 344-940, created in 1961, first created, published, released and produced as a full feature film with worldwide distribution, including throughout the United States, in or about December 1968 ("1968 Publication"), effective date of registration September 2, 1986 ("The Sin of Adam and Eve") (a true and correct copy of the copyright registration for The Sin of Adam and Eve is attached hereto as **Exhibit 2-A**);

b.   "Jesus, Mary and Joseph," author Alfredo Zacarias, registration number PA 874-919, first created, published, released, and distributed as a full feature film with worldwide distribution, including throughout the United States, in or about January 1969 ("1969 Publication"), effective date of registration November 26, 1997 ("Jesus, Mary and Joseph") (a true and correct copy of the copyright registration for Jesus, Mary and Joseph is attached hereto as **Exhibit 2-B**);

c.   "The Christ Child," author Panorama Films, S.A., registration number PA 785-313, first created, published, released and produced as a full feature film with worldwide distribution, including throughout the United States in or about January 1970 ("1970 Publication"), effective date of registration December 29, 1997 ("The Christ Child") (a true and correct copy of the copyright registration for The Christ Child is attached hereto as **Exhibit 2-C**);

**COMPLAINT**

d. "The Life of Jesus Christ," author Panorama Films, S.A., registration number PA 565-755, created in 1980, and published, released and produced as a full feature film with worldwide distribution, including throughout the United States, on or about January 3, 1981 ("1981 Publication"), with an effective date of registration November 1, 1991 ("The Life of Jesus Christ") (a true and correct copy of the copyright registration for The Life of Jesus Christ is attached hereto as **Exhibit 2-D**);

2.   Plaintiff Zach Motion Pictures is a family-owned business. Zach Motion Pictures is a film and television production company, spanning three generations of the Zacarias family, from writer-director Miguel Zacarias to Miguel's son, Alfredo Zacarias, a writer-director-producer, and to Alfredo's son, producer Alfredo Zacarias, Jr.

3.   The Life of Jesus Christ is a compilation of four (4) films written and directed by Miguel Zacarias, comprising parts of three feature-length films: The Sin of Adam and Eve, The Christ Child, and Jesus, Mary and Joseph.

4.   Zach Motion Pictures owns the copyrights and exclusive worldwide distribution rights for The Life of Jesus Christ, The Sin of Adam and Eve, The Christ Child, and Jesus, Mary and Joseph (collectively, again, the "Copyrighted Works").

5.   The Sin of Adam and Eve had a 1968 Publication. See *supra*.

6.   Jesus, Mary and Joseph had 1969 Publication. See *supra*.

7.   The Christ Child had a 1970 Publication. See *supra*.

8.   The Life of Jesus Christ had a 1981 Publication. See *supra*.

-3-

**COMPLAINT**

9.      Since each Publication of the Copyrighted Works, Plaintiff published, distributed, publicly displayed, and sold copies of the Copyrighted Works throughout the United States.

10.      All of the claims asserted herein arise out of and are based on Defendant's copying, distribution, and sale of a film called, The Nativity, that is virtually identical and or substantially similar to Plaintiff's Copyrighted Works ("The Nativity" or the "Infringing Work"). Plaintiff sues for copyright infringement under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 et seq.

11.      Plaintiff seeks all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiff's damages and Defendant's profits from Defendant's willfully infringing conduct, and other monetary relief, including, in the alternative to profits, statutory penalties.

## JURISDICTION AND VENUE

12.      This court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331[, 1332(a),] and 1338(a).

13.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of property that is the subject of the action is situated in this district, and 28 U.S.C. § 1391(b)(3), because Defendant is subject to personal jurisdiction in this district regarding this action, and there is no other district in which the action may otherwise be brought.

## PARTIES

14.      Plaintiff Zach Motion Pictures is a corporation incorporated and headquartered in the State of California.

-4-

**COMPLAINT**

15.     On information and belief, Defendant Bridgestone Media Group, LLC, ("Bridgestone") is a limited liability company, formed under the laws of Arizona and does its television and film distribution business regularly in the County of Los Angeles, State of California. On information and belief, Defendant Bridgestone is in the television and film business that is located in Los Angeles, California, and regularly has exploited the Copyrighted Works in Los Angeles, California.

**FACTUAL ALLEGATIONS**

A.  Plaintiff and Its Copyrighted Work

16.     The Copyrighted Works, and each of them, are wholly original, and Plaintiff is the exclusive owner of all right, title, and interest, including all rights under copyright, in the Copyrighted Works.

17.     The Copyrighted Works were all successfully released and received in movie theatres throughout the US, Mexico, Latin America, Spain, and Italy, in original Spanish.

18.     Plaintiff also owns the English-language version of all the Copyrighted Works.

19.     On or about late 1981, prior to Christmas 1981, The Life of Jesus Christ was distributed in its original Spanish-language version by Million Dollar Video Corporation, at the time, on information and belief, widely considered one of the largest distributer of Spanish-language films in the United States.

20.     On information and belief, in 1981, The Life of Jesus Christ was a "best-seller" in the United States for Million Dollar Video.

**COMPLAINT**

21.     At same time as The Life of Jesus Christ was distributed by Million Dollar Video, The Copyrighted Works were licensed to Univision for television distribution, and are currently licensed to Univision for television distribution.

22.     On information and belief, since 1970, as each of the Copyrighted Works were created and published, they have been played on television routinely annually at Christmas and Easter throughout many parts of the world, including the United States.

B.  <u>Defendant's Infringements</u>

23.     On information and belief, Defendants, and each of them, are engaged in the film and television business.

24.     Defendant has published and continues to sell The Nativity.

25.     The Nativity uses exact scenes from Plaintiff's original film, The Life of Jesus Christ, as The Nativity, like The Life of Jesus Christ, is a compilation of Plaintiff's original feature films, The Sin of Adam and Eve, The Christ Child, Jesus, Mary and Joseph, and original content from The Life of Jesus Christ (The Nativity shall be referred to as "Infringing Work").

26.     The Nativity's systematic and repeated infringements of the Copyrighted Works occur as follows in its film in the following chronological order:

  i.     Doctored Copyright Notice. The copyright notice is doctored a) by changing Miguel Zacarias' name to Miguel Zacaro; b) not including Panorama Films, S.A. as the proper original owner, instead inserting Telefilm Company, Inc.;

**COMPLAINT**

ii.  Doctored Opening Credits. Panorama Films, S.A. 1984 should be displayed instead Bridgestone is displayed;

iii.  Scene 2, entitled, The Creation, from 0:01'45" to 0:02'00" is the exact scene from The Sin of Adam and Eve;

iv.  Scene 3, entitled Creation of Man, from 0:02'01" to 0:02'20" is the exact scene from The Sin of Adam and Eve;

v.  Scene 4, entitled Garden of Eden, from 0:02'20" to 0:02'27" is the exact scene from The Sin of Adam and Eve;

vi.  Scene 5, entitled Angel Announcement to the Virgin Mary is the exact scene from The Christ Child;

vii.  Scene 6, entitled Close Up: Virgin Mary, is the exact scene from The Christ Child;

viii.  Scene 7, entitled Proclamation of the Roman Census, is the exact scene from The Christ Child;

ix.  Scene 8, entitled Holy Family to Bethlehem, from 0:04'45" to 0:05'21" is the exact scene from The Christ Child;

x.  Scene 9, entitled The Three Wise Kings Travel Following the Star of Bethlehem, starting at 0:05'21"  to 0:05'41" is the exact scene from The Christ Child;

**COMPLAINT**

xi.  Scene 10, entitled King Harod Receives the Three Wise Kings at his Palace, starting at 0:05'41" is the exact scene from The Christ Child;

xii.  Scene 11, entitled The Holy Family Arrives in Bethlehem and Cannot Find Lodging, is the exact scene from The Christ Child;

xiii.  Scene 12, entitled The Holy Family Arrives at the Manger, starting at 0:08'32" is the exact scene from The Christ Child;

xiv.  Scene 13, entitled Birth of Jesus, the Three Kings Present Their Gifts, starting at 0:09'07" is the exact scene from The Christ Child;

xv.  Scene 14, entitled Birth of Jesus, The Prophecy of Simeon and Anna, starting at 0:11'02" is the exact scene from The Christ Child;

xvi.  Scene 15, entitled Roman Garrison to Bethlehem, starting at 0:12'16" is the exact scene from The Christ Child;

xvii.  Scene 16, entitled Romans Arrive, Mary Returns from the Fountain, starting at 0:13'10" is the exact scene from The Christ Child;

xviii.  Scene 17, entitled Harod Orders the Massacre of the Innocents, starting at 0:14'15" is the exact scene from The Christ Child;

xix.  Scene 18, entitled Massacre of the Innocents, Orders Recevied, starting at 0:15'11" is the exact scene from The Christ Child;

xx.  Scene 19, entitled Party Before the Massacre, starting at 0:16'05" is the exact scene from The Christ Child;

-8-

**COMPLAINT**

xxi.    Scene 20, entitled Soldiers Begin Massacre, starting at 0:16'45" is the exact scene from The Christ Child;

xxii.   Scene 21, entitled Angel Tells Joseph to Flee to Egypt, starting at 0:17'30" is the exact scene from The Christ Child;

xxiii.  Scene 22, entitled Holy Family in the Desert on Their Way to Egypt, starting at 0:18'48" is the exact scene from The Christ Child;

xxiv.   Scene 23, entitled Joseph Declines to Build A Cross, starting at 0:19'01" is the exact scene from Jesus, Mary and Joseph;

xxv.    Scene 24, entitled The Holy Family Leaves Egypt Back to Nazareth, starting at 0:21'30" is the exact scene from Jesus, Mary and Joseph;

xxvi.   Scene 25, entitled Holy Family at the Sea of Galilee, starting at 0:22'05" is the exact scene from Jesus, Mary and Joseph;

xxvii.  Scene 26, entitled Holy Family to High Temple for Passover, starting at 0:22'20" is the exact scene from Jesus, Mary and Joseph;

xxviii. Scene 27, entitled Jesus Enters the High Priests' Chambers, starting at 0:24'24" is the exact scene from Jesus, Mary and Joseph;

xxix.   Scene 28, entitled Mary Waits for Jesus and Jospeh Outside the Temple, starting at 0:24'56" is the exact scene from Jesus, Mary and Joseph;

xxx.    Scene 29, entitled Jesus Does Not Sacrifice the White Dove, Lets it Fly Free, starting at 0:25'03" is the exact scene from Jesus, Mary and Joseph;

**COMPLAINT**

xxxi.  Scene 30, entitled Jesus Stays at the Temple Instead of Joining the Caravan, starting at 0:25'55" is the exact scene from Jesus, Mary and Joseph;

xxxii.  Scene 31, entitled Joseph and Mary Discover that Jesus is Missing, starting at 0:28'23" is the exact scene from Jesus, Mary and Joseph;

xxxiii. Scene 32, entitled Joseph, Mary and Young John The Baptist Return to the Temple Looking For Jesus, starting at 0:29'37" is the exact scene from Jesus, Mary and Joseph;

xxxiv.  Scene 33, entitled Jesus at the Temple with the High Priests, starting at 0:30'14" is the exact scene from Jesus, Mary and Joseph;

xxxv.  Scene 34, entitled Jospeh Finds Jesus at the Temple, starting at 0:32'01" is the exact scene from Jesus, Mary and Joseph;

xxxvi.  Scene 35, entitled Fade Out of Jesus at the Temple, Close Up of Mary, starting at 0:33'58" is the exact scene from Jesus, Mary and Joseph;

xxxvii. Scene 36, entitled John The Baptist is Grown to Manhood, starting at 0:34'00" is the exact scene from Jesus, Mary and Joseph;

xxxviii.      Scene 37, entitled Jesus is Baptized b John The Baptist in the River Jordan, starting at 0:36'00" is the exact scene from Jesus, Mary and Joseph;

-10-

**COMPLAINT**

xxxix.  Scene 38, entitled Jesus Fasts in the Wilderness for Forty Days and is Tempted by Satan, starting at 0:36'30" is the exact scene from Jesus, Mary and Joseph;

xl.  Scene 39, entitled John The Baptist is Apprehended by the Romans for Insulting King Harod, starting at 0:37'52" is the exact scene from Jesus, Mary and Joseph;

xli.  Scene 40, entitled John The Baptist is Condemned to Prison by King Harod, starting at 0:39'20" is the exact scene from Jesus, Mary and Joseph;

xlii.  Scene 41, entitled Jesus Starts Recruiting the Apostles at the Sea of Galilee, starting at 0:40'02" is the exact scene from Jesus, Mary and Joseph;

xliii.  Scene 42, entitled Judas Joins Jesus and the Apostles, starting at 0:42'20" is the exact scene from The Life of Jesus Christ;

xliv.  Scene 43 and for all subsequent scenes until the end of The Nativity, including, but not limited to, all major events of Jesus' life up to his resurrection are exact scenes from The Life of Jesus Christ;

xlv.  During Final Credits, original end credits of The Life of Jesus Christ are included as well as doctored and false credits at 1:31'00".

-11-

**COMPLAINT**

27.     On information and belief, the Infringing Work is being distributed and published on www.youtube.com; and is being sold throughout the United States and elsewhere over many platforms, including, not limited to, www.Amazon.com on DVD.

28.     Plaintiff never consented to or authorized Defendant's use of any Copyrighted Works at any time for any purpose. Every use by Defendants, and each of them, of the Copyrighted Works is unauthorized.

29.     On information and belief, Defendants obtained physical possession of or otherwise viewed Plaintiff's Copyrighted Work, and intentionally copied the Copyrighted Works to create the Infringing Work. That Defendants copied the Copyrighted Work when it created the Infringing Work is evidenced by the display of exact scenes from the Copyrighted Works, which cannot possibly be explained other than as a result of copying the Copyrighted Works.

30.     On information and belief, Defendants even edited the copyright notices and names of Plaintiff on the cover of The Nativity to avoid detection by Plaintiff of Defendants' infringements.

31.     Defendants copied The Life of Jesus Christ without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

32.     Since Defendant copied the Copyrighted Work to create the Infringing Work, it has been distributing and selling The Nativity with impunity across the United States and across various parts of the world.

33.     On information and belief, Defendant's infringement is ongoing and continuous through the present day.

-12-

**COMPLAINT**

34.     On or about December 21, 2021, Plaintiff's then-counsel sent a cease and desist letter to Defendants objecting to Defendants' unauthorized reproduction, distribution, public display, and sale of the Infringing Work. Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiff's prior counsel's cease and desist letter to Defendants.

35.     To date, after reasonable inquiry, Plaintiff has no evidence that Defendants have complied with the demands set out in Plaintiff's former counsel's cease and desist letter.

36.     As a result of Defendants' actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, public display, and sale of the Infringing Work. Defendants have never accounted to or otherwise paid Plaintiff for its use of the Copyrighted Work.

37.     Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs for which Plaintiffs has no adequate remedy at law.

## FIRST CAUSE OF ACTION
### Federal Copyright Infringement
### (17 U.S.C. § 501)

38.     Plaintiff repeats and realleges paragraphs 1 through 31 hereof, as if fully set forth herein.

39.     The Copyrighted Works are original works of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Plaintiff is the exclusive owner of rights under copyright in and to the Copyrighted Works. Plaintiff owns valid copyright registrations for each of the Copyrighted Works, attached as **Exhibit 2 A-D**.

-13-

**COMPLAINT**

40.     Through Defendants' conduct alleged herein, including Defendants' ongoing reproduction, distribution, public display and sale of the Infringing Work, which is copied from, derivative of, and substantially similar to Plaintiffs' Copyrighted Works, without Plaintiff's permission, Defendants have directly infringed Plaintiff's exclusive rights in the Copyrighted Works in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

41.     On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Works, and has enabled Defendants illegally to obtain profit therefrom.

42.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

43.     Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendants' infringing conduct for each of Plaintiff's property that Defendants has infringed, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

44.     Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

45.     As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable

-14-

**COMPLAINT**

injury, for which there is no adequate remedy at law. On information and belief, unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the Copyrighted Works. Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

## SECOND CAUSE OF ACTION

### Integrity of Copyright Management Information

### (17 U.S.C. § 1202 (b))

46.     Plaintiff repeats and realleges paragraphs 1 through 31 hereof, as if fully set forth herein.

47.     In each of Defendants' ongoing reproductions, distributions, public displays and sales of the Infringing Work, Defendants have caused the Infringing Work to provide copyright management information that is false, removed and altered copyright management information has been removed and altered, from the director of The Life of Jesus Christ being Miguel Zacarias (not "Miguel Zacario") to the proper copyright holder being Zach Motion Pictures (not "Telefilm Company, Inc.").

48.     As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has been harmed and is entitled to actual or statutory damages in an amount to be proven at trial.

49.     Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 1203 (b)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request judgment against Defendant as follows:

### FIRST CAUSE OF ACTION

-15-

**COMPLAINT**

1.      That Defendant has violated Section 501 of the Copyright Act (17 U.S.C. § 501).

2.      Granting an injunction permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

      (a)      Manufacturing, distributing, marketing, advertising, promoting, displaying, performing, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, display, perform, or sell the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works;

      (b)      Reproducing, distributing, performing, or publicly displaying the Copyrighted Work, creating any derivative works based on the Copyrighted Works, or engaging in any activity that infringes Plaintiff's rights in its Copyrighted Works; and

      (c)      aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) or (b).

3.      That Defendant be ordered to provide an accounting of Defendant's profits attributable to Defendant's infringing conduct, including Defendant's profits from sales of the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work.

4.      That Defendant be ordered to destroy or deliver up for destruction all materials in Defendant's possession, custody, or control used by Defendant in connection with Defendant's infringing conduct, including without limitation all remaining copies and inventory of the

-16-

**COMPLAINT**

Infringing Work and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Works, as well as all means for manufacturing them.

5.      That Defendant, at its own expense, be ordered to recall the Infringing Work from any distributors, retailers, vendors, or others that have distributed the Infringing Work on Defendant's behalf, and any products, works or other materials that include, copy, are derived from, or otherwise embody the Infringing Work or the Copyrighted Works, and that Defendant be ordered to destroy or deliver up for destruction all materials returned to it.

6.      Awarding Plaintiff:

(a)      Defendant's profits obtained as a result of Defendant's infringing conduct, including but not limited to all profits from sales and other exploitation of the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Infringing Work or the Copyrighted Work, or in the Court's discretion, such amount as the Court finds to be just and proper;

(b)      damages sustained by Plaintiff as a result of Defendant's infringing conduct, in an amount to be proven at trial;

(c)      should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits; and

(d)      Plaintiff's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

7.      Awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums.

**SECOND CAUSE OF ACTION**

**COMPLAINT**

8.      Statutory or actual damages in an amount to be determined at time of trial;

9.      Temporary and permanent injunctions on any further reproductions, distributions, public displays and sales of the Infringing Work;

10.     Reasonable attorney's fees;

11.     Costs of bringing such action; and

12.     Awarding such other and further relief as the Court deems just and proper.

DATED:  August 4, 2023                         Respectfully submitted,




                                        By:    /s/ William Charles Tanenbaum
                                        WILLIAM CHARLES TANENBAUM, ESQ.
                                        *Attorneys for Plaintiff*
                                        ZACH MOTION PICTURES, INC.

## JURY TRIAL DEMANDED

PLAINTIFF ZACH MOTION PICTURES, INC., hereby demands a jury trial on all issues.

DATED:  August 4, 2023        LAW OFFICES OF WILLIAM CHARLES TANENBAUM, ESQ.

                                        By:    /s/ William Charles Tanenbaum
                                        WILLIAM CHARLES TANENBAUM, ESQ.
                                        *Attorneys for Plaintiff*
                                        ZACH MOTION PICTURES, INC.

**COMPLAINT**

# Exhibit "1"

Tiana S. Baheri (SBN 330835)                                    *For Settlement Purposes Only*

tianabaheri@gmail.com                                           *Subject to F.R.E. 408*
301 W 2nd Street, Unit 108
Santa Ana, CA 92701

Telephone: 978-289-8297

December 22, 2021

Via email to: David E. Austin (danstin@gobmg.com)

Re: Bridgestone Multimedia Group's Copyright Infringement of *La Vida de Nuestro Senor* and Related Works

Dear Mr. Austin:

Please direct this letter to Bridgestone Multimedia Group's attorney and have your attorney notify me of such representation forthwith.

Alfredo H. Zacarias, and Zach Motion Pictures, Inc. have retained me to represent them in relation to Bridgestone Multimedia Group's ("BMG's") infringement of their exclusive copyright in the motion picture film entitled *La Vida de Nuestro Senor (The Life of Jesus Christ)*, which BMG distributes without authorization under the title *The Nativity: The Life of Jesus Christ* ("the Work"). BMG's infringing acts include, but are not limited to, distribution and sale of the Work on streaming platforms (e.g., YouTube and Amazon Prime) as well as unauthorized sale of DVD/VHS copies of the Work.

## THE COPYRIGHTED WORKS

The Work is a Mexican epic religious film first published in 1981. Mr. Zacarias produced the film as sole owner of Panorama Films S.A. ("Panorama").. The Work itself utilizes footage from four copyrighted motion picture films—*El Pecado de Adan y Eva* (1968), *Jesús, el niño Dios* (1971), *Jesús, María y José* (1969), and *Jesús, nuestro Señor* (1971) ("the Underlying Works"). The Underlying Works were all written and directed by Mr. Zacarias's father, Miguel Zacarias, and are regarded classics of early Mexican cinema. In short, the intellectual property at issue here has significant personal, cultural, and emotional significance for my clients.

In 1984, an American producer approached my clients with an offer to produce an English dub of the Work—which had, at that point, been published only in Spanish—for American audiences. My clients agreed, and, in exchange, granted the American producer a five-year exclusive license to distribute the English dub of the film in the United States. Apparently, the American producer, Telefilm Company Inc., registered copyright in the English soundtrack it produced for the Work. A copy of Telefilm's Copyright Office registration is attached here as **Exhibit A.** As you can see, the registration facially claims *only* copyright in the "English dubbed soundtrack" of the Work. The registration is consistent with well-settled copyright law, which provides that copyright in a derivative work (i.e., an English dubbed version of a Spanish language motion picture) covers only the new material appearing for the first time in the derivative work (i.e., the English dubbed soundtrack) not any preexisting material (i.e., the footage, plot, dialogue, and composition of the Work) registered to another or existing in the public domain. In sum, even if Telefilm could license the copyright to the English dubbed soundtrack—which, as explained in the next paragraph, it could not—it could not license any other part of the Work to BMG. That much was certainly clear to BMG from the 1984 registration.

rights it had in the derivative of the Work back to Mr. Zacarias and his production company, Zach Motion Pictures, Inc. Indeed, Telefilm also surrendered the master copy of the English dubbed Work to my clients at that time. That original remains in my clients' possession. A record of Telefilm's transfer of all rights to Zach Motion Pictures is available through the Copyright Office's Official Public Catalogue (the "OPC") and is attached here as **Exhibit B**. To be clear, after that transfer was complete, Telefilm retained no remaining right in the Work or the English dubbed soundtrack.

In 1996, the Uruguay Round Agreements Act ("URAA") automatically restored copyright in certain foreign works that were then in the public domain in the United States but were protected by copyright or similar intellectual property rights in the source country. The Work, and the Underlying Works, met all eligibility criteria (e.g., it was protected by copyright in its country of origin, Mexico; it had not been published in the United States in the 30 days after initial publication in Mexico; and its country of origin, Mexico, was a signatory to the Berne Convention). Because Mexico was a Berne signatory when the URAA went into effect, copyright in the Work and all Underlying Works was automatically restored on January 1, 1996. No registration was required except to put reliance parties (i.e., those using the Work prior to its restoration) on notice of the restored copyright; nevertheless, my clients timely recorded their intent to enforce their rights with respect to the Work. *See* 37 CFR § 201.33 (b)(ii) (deadline to file notice for works restored on January 1, 1996 was December 31, 1997). The Notice of Intent to Enforce ("NIE") for the Work, which was filed in 1996, is attached here as **Exhibit C**. My clients also timely registered three of the Underlying Works—*El Pecado de Adan y Eva* (1968) and *Jesús, el niño Dios* (1971) and *Jesús, María y José* (1969)—with the Copyright Office by filing NIEs pursuant to the URAA. Those NIEs are attached here as **Exhibits D, E,** F.

As you can see, in all instances, the works claimed in **Exhibits C-F** (hereinafter, "the Copyrighted Works") are registered to Mr. Zacarias and/or Zach Motion Pictures, Inc. and/or Panorama Films S.A., and/or, Producciones Zacarias S.A.

## BMG'S WILLFULL INFRINGEMENT

As you may know, my clients discovered BMG's infringement in the fall of 2021 when YouTube informed their distribution partner, Veranda Entertainment, that BMG was streaming the Work on that platform without authorization. Our understanding is that, following communications between BMG and Veranda, BMG initially refused to remove the infringing material. Indeed, in those communications, BMG indicated that it has been making unauthorized commercial use of the Work since at least 2013, and insisted that its unauthorized use is somehow excused because it licensed the Work from certain third parties. Specifically, BMG asserted that, beginning in 2013, it purportedly licensed the Work from Jim McCullough Entertainment ("JME") and/or Eva Ward—third parties that are unknown to my clients and have no recorded claim with the Copyright Office relating to the Copyrighted Works.

Based on its communications to Veranda, we anticipate BMG will claim it is somehow shielded by its good faith reliance on representations made to it by third parties. But BMG's "good faith" argument is no defense here. For one thing, copyright infringement is a strict liability offense: BMG is responsible for any infringing act regardless of its intent. *See Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 199 (1931); *De Acosta v. Brown*, 146 F.2d 408, 412 (2d Cir. 1944) ("[T]he protection accorded [copyrighted works] would be of little value if it did not go against third persons, or if, it might be added, insulation from payment of damages could he secured by a publisher by merely refraining from making inquiry.")

Nor can BMG side-step statutory damages for its willful infringement by claiming "good faith." As noted above, my clients hold exclusive copyright in the Work, and even the most cursory due diligence by BMG would have revealed that there exists no chain of title granting *any* rights to Eva Ward/JM, let alone rights they could unilaterally transfer to BMG. Indeed, certain copies of the Work distributed by BMG (e.g., the VHS version) retain the copyright notice that my clients included in the opening credits, which puts viewers on notice that Panorama owns copyright in the Work. Even the infringing YouTube version of the Work indicates that it is a "Panorama Films S.A." production. A cursory search of "Panorama Films S.A." on the Copyright Office website would, in turn, inform anyone with internet access—let alone a sophisticated global media corporation like BMG that is, presumably, in the business of licensing/acquiring rights—that Panorama, not JME and/or Eva Ward, owns copyright in the motion picture entitled *The Life of our Lord Jesus*. Included below is a true and correct screenshot of the relevant portion of the results for "Panorama Films S.A." on the OPC. The relevant registration is

| | | Name / director. Gilberto Martinez Solare. | | |
|---|---|---|---|---|
| ☐ (16) | Panorama Films, SA | Nano / director. Gilberto Martinez Solare. | PA0000785309 | 1997 |
| ☐ (17) | Panorama Films, SA | Ni saltenta ni passdos / productor y director. Alfredo Zacarias. | PA0000883873 | 1997 |
| ☐ (18) | Panorama Films, SA. | Ni saltenta ni cuando = That marriage affair / Additional role: Desde de cuados = Cell of the love bird. | V8000P230 | 1996 |
| ☐ (19) | Panorama Films, SA | Vida de Chucho el Roto = The life of Chucho el Roto. | V8000P224 | 1996 |
| ☐ (20.) | Panorama Films, SA | Vida de asunto amor = The life of our Lord Jesus. | V8000P231 | 1996 |
| ☐ (21) | Panorama Films, SA | Yo soy Chucho el Roto / director y producior. Alfredo Zacarias. | PA0000785363 | 1997 |
| ☐ (22.) | Panorama Films, SA. | Yo soy Chucho el Roto = I am Chucho el Roto. | V8000P214 | 1996 |
| ☐ (23) | Panorama Films, SA de CV | Capulina contra las Momias / producior & director. Alfredo Zacarias. | PA0000726034 | 1974 |
| ☐ (24) | Panorama Films, SA de CV | Hermana tristeqate / una pelicula de Alfredo Zacharias . direccion. Rene Cardoza. Jr. | PA0000699326 | 1970 |
| ☐ (25) | Panorama Films, SA de CV | Inebvitable Chucho el Roto = The unforgettable Chucho el Roto. | V8000P217 | 1996 |

| | | | | |
|---|---|---|---|---|
| ☐ [ 1 ] | The life of Jesus Christ | Bible 302 : The life of Jesus Christ / author, Patricia Goss ; editor, Richard W. Wheeler ; revision editor, Alan Christopherson. | TX0004997466 | 1995 |
| ☐ [ 2 ] | The life of Jesus Christ. | Chase of Jesus Christ. | TXu001172014 | 2003 |
| ☐ [ 3 ] | Life of Jesus Christ | Jesus nuestro senor / Additional title: Life of Jesus Christ. PA 565-755 (1991) | V3454D242 | 2000 |
| ☐ [ 4 ] | The Life of Jesus Christ. | Life of Christ / written by Dorothy Nora Lammers. | TXu000128230 | 1983 |
| ☐ [ 5 ] | Life of Jesus Christ. | Life of Jesus Christ. | TXu002128566 | 2018 |
| ☐ [ 6 ] | Life of Jesus Christ. | Life of Jesus Christ. | VAu000668860 | 2005 |
| ☐ [ 7 ] | The life of Jesus Christ. | Life of Jesus Christ. | PAu001816607 | 1993 |
| ☐ [ 8 ] | The life of Jesus Christ. | Life of Jesus Christ. | V2758P051 | 1992 |
| ☐ [ 9 ] | The life of Jesus Christ. | Life of Jesus Christ. | TXu000530609 | 1992 |
| ☐ [ 10 ] | The life of Jesus Christ. | Vida de Nuestra Senor / la produccion de Panorama Films, S.A. ; director, Miguel Zacarias. | PA0000565755 | 1981 |
| ☐ [ 11 ] | Life of Jesus Christ. | Vida de nuestro Senor : a.k.a. The Life of Jesus Christ; motion picture. | V2488P202 | 1989 |
| ☐ [ 12 ] | The Life of Jesus Christ and Biblical revelations | Promised one / by J. Phanuel Issoud, of Louis W. Coacici | TXu000090619 | 1982 |
| ☐ [ 13 ] | The Life of Jesus Christ and Biblical Revelations | Resurrection of the Christ. | PAu002951317 | 2005 |
| ☐ [ 14 ] | The Life of Jesus Christ as Seen Through His Eyes | Jesus Christ - Through His Eyes. | PAu003633599 | 2012 |
| ☐ [ 15 ] | The Life of Jesus Christ / author, Patricia Goss ; editor, Richard W. Wheeler ; illustrators, Melissa Goss, Olivia Spencer. | Life of Jesus Christ / author, Patricia Goss ; editor, Richard W. Wheeler ; illustrators, Melissa Goss, Olivia Spencer. | TX0000125048 | 1978 |
| ☐ [ 16 ] | The life of Jesus Christ / by American Panorama, Inc. | Life of Jesus Christ / by American Panorama, Inc. | PA0001349890 | 1988 |

BMG's reckless disregard for my clients' rights is further evidenced by its inclusion of patently false copyright management information in its infringing copies of the Work, which obscures the infringement from good faith purchasers. For example, an image of the back cover of the DVD available on Amazon bears the BMG logo and reads: © *1984 Telefilm Company, Inc., All Rights Reserved.* Ample publicly available evidence established that BMG *knew* this information was false. *First,* there can be no question that BMG was aware of the 1984 Telefilm registration when it began its infringing acts—after all, it referenced that registration on the infringing DVD covers. Yet, the OPC record of this 1984 registration reveals, on its face, that Telefilm was claiming copyright only in the "English dubbed soundtrack," not the Work as a whole. *See* **Exhibit A.** *Second,* the 1984 registration placed BMG on notice of Telefilm's 1989 transfer of any rights it *did* have to my client, Zach Motion Pictures, Inc because it provided the original English and Spanish titles of the Work (*La Vida de Nuestro Senor/The Life of Jesus Christ*), and its original owner/author (Panorama). All BMG had to do to find a record of the 1989 transfer was search the keywords from the 1984 registration. Thus, BMG cannot elide responsibility by claiming JME and/or Eva Ward somehow obscured true ownership of the Work from it by licensing it under the alternative title *The Nativity: The Life of Jesus Christ*: BMG had all the relevant information about its infringement at its fingertips. A true and correct screenshot of the search results for "Life of Jesus Christ" on the OPC is included below—the eleventh entry on the first page of results leads to the record of the 1989 transfer.

In sum, my clients own all rights in the Work, its English dub, and the Underlying Works it incorporates. BMG made unauthorized use of it, and it did so knowingly. BMG cannot escape liability now by claiming it could not see evidence of its infringement because it had its head buried in the sand.

## DAMAGES FOR COPYRIGHT INFRINGEMENT

Under federal copyright law, the holder of a copyright has the exclusive right to do, and to authorize, any of the following: use, prepare derivative works based upon, reproduce, distribute, display and perform a copyrighted work. *See* 17 U.S.C. § 106. An infringer of copyright is liable for damages, and may also be responsible for attorney's fees and costs. *See* 17 U.S.C. §§ 500-505.

BMG has admittedly used/sold/distributed the Work since at least 2013. In short, the infringement is clear. The only remaining question is the extent of damages to be paid. Because my clients registered the copyright to the Work (as well as three of the Underlying Works and the English-dubbed derivative) with the Copyright Office prior to BMG's infringement, *see* **Exhibits C-F,** they may elect either to receive the actual damages caused by and the profits earned from the infringement *or* statutory damages of up to $150,000 for willful infringement for each registered work. *See* 17 U.S.C. §504(b) and (c).

Under copyright law, "willful infringement" has a particular meaning. Courts have repeatedly found that "a finding of 'willfulness' can be based on either 'intentional' behavior, or merely 'reckless' behavior." *See In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008). In other words, BMG will be liable for up to $150,000 per work if a court finds that BMG's unauthorized use was done in "'reckless disregard' for, or "willful blindness" to, my clients' rights. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc*., 704 F.3d 668, 674 (9th Cir. 2012). And BMG cannot defeat a finding of willfulness by asserting, in conclusory fashion, that it relied on third-party representations "in good faith." Rather, to refute evidence of willfulness, BMG would have to "not only establish its good faith belief in the innocence of its conduct,

909 F.2d 1332, 1336 (9th Cir. 1990) (emphasis added). BMG cannot make such a showing here. Not when the evidence BMG itself has relied on (i.e., the 1984 Telefilm copyright registration) is limited, on its face, to rights in the English soundtrack and does not extend to the Work as a whole. Further, it would strain credulity to claim that BMG, a global media corporation, would *not* search the Work's title and the original author listed on the OPC registration before purchasing rights to the Work from a third party. In doing so, BMG would discover that all rights in the Work are registered to my clients and/or their affiliates, Panorama and Producciones Zacarias. Finally, because my clients timely filed NIEs for the Work and the Underlying Works nearly twenty years before BMG commenced its infringing use, any creative after-the-fact assertion by BMG that it reasonably believed the Work was in the public domain is unavailing.

In sum, even without the benefit of formal discovery and relying only on public information, we are confident that we can establish BMG's infringement was willful in formal litigation, and recover (1) the greater of enhanced statutory or actual damages, and (2) attorneys' fees and costs.

## DAMAGES FOR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION

As noted above, my clients posted copyright information in the form of a copyright notice displayed in the opening credits of the Work. In at least some instances of unauthorized distribution (e.g., the streaming versions of the Work and the back jacket of the DVD), BMG removed the copyright management information in violation of 17 U.S.C. §1202(b), which states that:

No person shall, without the authority of the copyright owner or the law, intentionally remove or alter any copyright management information knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

The damages for violating 17 U.S.C. §1202 alone start at $2,500 and go to $25,000 per violation, in addition to any fines for copyright infringement. *See* 17 U.S.C. §1203(c)(3)(b). My clients are therefore entitled to combined damages: actual or statutory damages for copyright infringement *and* statutory damages for the removal of copyright management information.

## NOTICE TO ISSUE LITIGATION HOLD

You are on notice that litigation is likely regarding BMG's actions concerning the Work. BMG is now obligated and has a duty to preserve all evidence that may be relevant to the dispute discussed above and that may be the subject of pending litigation. This duty of preservation extends to, but is not limited to, data files, e-mails, calendars, telephone logs, access lists, and logs that are located on computer networks, e-mail servers, mainframes, individual computer workstations, and external drives owned by BMG and/or its agents, or are located on any of those devices within BMG's control but not owned by BMG, such as BMG's web host.

Specifically, but not exclusively, BMG is on notice that it must preserve all evidence of all of its uses of the Work. This duty extends to BMG's employees and agents. We request that BMG notify its employees and agents of this retention request immediately. Sanctions for violating any of the foregoing duties can be severe and include substantial monetary sanctions, adverse inferences in evidentiary rulings, and the entry of judgments by default. We remain hopeful that we can resolve this dispute short of litigation. The above duties, however, must be satisfied during any settlement or other discussions that we may have.

## SUMMARY OF CLIENTS' DEMANDS

Based on the foregoing, we demand that BMG:

entirety from YouTube, Amazon, and any other streaming platforms, and delisting/discontinuing sale of

physical copies of the Work;

2. Return all physical copies of the Work to my clients;

3. Provide a full accounting of all of BMG's uses of the Work; and

Provide a full accounting of all of BMG's revenues, from 2003 to the present, that are attributable to licensing agreements.

4.

## OFFER TO SETTLE CLAIMS

My clients are willing to provide you an opportunity to settle claims against you and end this matter immediately if BMG (1) complies with the above demands, (2) affirms its compliance in a signed affidavit, and agrees, in the same writing, that it will make no future unauthorized use of the Work, and (3) sends certified funds in the amount of $250,000 payable to the following:

c/o Alfredo H. Zacarias

Zach Motion Pictures, Inc.

4224 Hayvenhurst Dr
Encino, CA, 91436-3730

within fourteen (14) days of receipt of this letter. Please note that this amount represents an offer of settlement hut does not reflect the damages that my clients can and will seek in a court proceeding, including attorneys' fees pursuant to 17 U.S.C. §§ 505 and 1203. Rather, this settlement offer reflects what my clients will accept if no further actions against you are necessary. If you do not accept this offer, my clients reserve the right to seek the maximum available damages under the law, which far exceed the amount above.

As you can see, BMG's infringement is clear-cut and evidence of its willful conduct is staggering. Because courts are generally reluctant to decide fact-heavy cases like this at the summary judgment stage, once we proceed to formal litigation, any "settlement events" are exceedingly unlikely. In other words, once my clients file their complaint, they intend to take this matter to a jury. I therefore strongly urge BMG to accept this generous early settlement offer. To wit, please be advised that if you are unwilling to engage in settlement efforts, my clients will initiate formal litigation, and may do so at any time without further notice to you. Further, if you carry business insurance, now may be an appropriate time to contact your carrier to determine whether my clients' claims are covered under your policy. This letter is without prejudice to my clients' rights and claims, which are expressly reserved.

We appreciate your prompt attention this serious matter, and look forward to your timely response.

Sincerely,

*s/ Tiana S. Baheri*

5

Tiana S. Baheri (SBN 330835)                                      *For Settlement Purposes Only*
tianabaheri@gmail.com                                            *Subject to F.R.E. 408*
301 W 2nd Street, Unit 108
Santa Ana, CA 92701

Telephone: 978-289-8297

December 27, 2021

Via email to: David E. Austin (daustin@gobmg.com)
CC: Candra Knobloch (cknobloch@gobmg.com); Steve Bulzoni (sbulzoni@gobmg.com)

Re: Bridgestone Multimedia Group's Copyright Infringement of *La Vida de Nuestro Senor* and
Related Works

Dear Mr. Austin:

  Please direct this letter to Bridgestone Multimedia Group's attorney and have the attorney notify me of
such representation forthwith.

     Alfredo H. Zacarias, and Zach Motion Pictures, Inc. have retained me to represent them in relation
to Bridgestone Multimedia Group's ("BMG's") infringement of their exclusive copyright in the motion
picture film entitled *La Vida de Nuestro Senor* ("*The Life of Jesus Christ*"), which BMG distributes
without authorization under the title *The Nativity: The Life of Jesus Christ* ("the Work"), and underlying
copyrighted works. BMG's infringing acts include, but are not limited to, distribution and sale of the
Work on streaming platforms (e.g., YouTube[1] and Amazon Prime[2]) as well as unauthorized sale of
DVD/VHS[3] copies of the Work.

---

  [1] "The Nativity: The Life of Jesus Christ," *YouTube.com*, https://www.youtube.com/watch?v=-
SSe5ZrsKw8&t=11s&ab_channel=YouTubeMovies (last retrieved Dec 16, 2021). Although "Quiver,"
rather than BMG, is listed as the distributor of this title on YouTube, the opening credits bear the BMG
logo.
  [2] "The Nativity: The Life of Jesus Christ," *Amazon.com*, https://www.amazon.com/Nativity-Life-
Jesus-Christ/dp/B073V5PG2X (last retrieved Dec 16, 2021). "Bridgestone Multimedia Group, LLC" is
listed as the studio in the "details" section of the streaming page. This title is currently listed as
unavailable for Amazon Prime users in California; however, entries are generally listed on Amazon Prime
only if they have been, or will be, available for streaming. My clients therefore have a good faith belief
that BMG has infringed their copyright by distributing the Work on Amazon Prime.
  [3] "The Nativity," *Amazon.com*,
https://www.amazon.com/dp/B00E4V0F2Y/ref=atv_dp_oth_format_dvd_0 (last retrieved Dec 16, 2021).
DVD and VHS copies of the Work are available for sale in the Amazon marketplace. These unauthorized
copies are priced at $4.85-$63.98 depending on the seller. The page also displays a photo of the DVD
jacket, which bears the BMG logo.

## THE COPYRIGHTED WORKS

The Work is a Mexican epic religious film first published in 1981. Mr. Zacarias produced the film as sole owner of Panorama Films S.A. ("Panorama"). The Work itself utilizes footage from four copyrighted motion picture films—*El Pecado de Adan y Eva* (aka "*The Sin of Adam and Eve*") (1968), *Jesús, el niño Dios* (1971), *Jesús, María y José* (1969), and *Jesús, nuestro Señor* (1971) (collectively, 'the Underlying Works"). The Underlying Works were all written and directed by Mr. Zacarias's father, Miguel Zacarias, and are regarded classics of early Mexican cinema. In short, the intellectual property at issue here has significant personal, cultural, and emotional significance for my clients.

In 1984, an American producer approached my clients with an offer to produce an English dub of the Work—which had, at that point, been published only in Spanish—for American audiences. My clients agreed, and, in exchange, granted the American producer a five-year exclusive license to distribute the English dub of the film in the United States. Apparently, the American producer, acting on behalf of Telefilm Company Inc., registered copyright in the English soundtrack he produced for the Work. A true and correct copy of the Copyright Office's public record of the Telefilm registration is attached here as **Exhibit A.** As you can see, the registration facially claims *only* copyright in the "English dubbed soundtrack" of the Work. The registration is consistent with well-settled copyright law, which provides that copyright in a derivative work (i.e., an English dubbed version of a Spanish language motion picture) covers only the new material appearing for the first time in the derivative work (i.e., the English dubbed soundtrack) not any preexisting material (i.e., the footage, plot, dialogue, and composition of the Work). In sum, even if Telefilm could license the English dubbed soundtrack—which, as explained in the next paragraph, it could not—it could not license any other part of the Work to BMG.

In 1989, the exclusive license on the English dub ended and Telefilm transferred what limited rights it had in the derivative work back to Mr. Zacarias's company: Zach Motion Pictures, Inc. Indeed, Telefilm also surrendered the master copy of the English dubbed Work to my clients at that time. That original remains in my clients' possession. A record of Telefilm's transfer of all rights to Zach Motion Pictures is available through the Copyright Office's Official Public Catalogue (the "OPC") and is attached here as **Exhibit B.** To be clear, after that transfer was complete, Telefilm retained no remaining right in the Work or the English dubbed soundtrack.

In 1996, the Uruguay Round Agreements Act ("URAA") automatically restored copyright in certain foreign works that were then in the public domain in the United States but were protected by copyright or similar intellectual property rights in the source country. The Work and the Underlying Works met all eligibility criteria (e.g., they were protected by copyright in their country of origin, Mexico; they had not been published in the United States in the 30 days after initial publication in Mexico, if at all; and their country of origin, Mexico, was a signatory to the Berne Convention). Because Mexico was a Berne signatory when the URAA went into effect, copyright protection for the Work and all Underlying Works automatically went into effect as of January 1, 1996 at the latest.[4] No registration was required

---

[4] This is not a concession that the Work, or any Underlying Works, had entered the public domain in the United States prior to URAA restoration. However, to simplify the discussion and because the Work's copyright status prior to 1996 is of little concern here, this letter cuts straight to URAA restoration.

except to put reliance parties (i.e., those using the Work prior to its restoration) on notice of the restored copyright; nevertheless, my clients timely recorded their intent to enforce their rights with respect to the Work. *See* 37 C.F.R. § 201.33 (b)(ii) (deadline to file notice for works restored on January 1, 1996 was December 31, 1997). The Notice of Intent to Enforce ("NIE") for the Work, which was filed in 1996, is attached here as **Exhibit C.** My clients also timely registered two of the Underlying Works—*Jesús, el niño Dios* (1971) and *Jesús, María y José* (1969)—with the Copyright Office by filing NIEs pursuant to the URAA. Those NIEs are attached here as **Exhibits D, E.** Finally, my clients had already registered another Underlying Work—*El Pecado de Adan y Eva* (1968)—with the Copyright Office in 1986 when an American distributor approached them with an offer to market the film in the United States for the first time. The registration record for that Underlying Work is attached here as **Exhibit F.**

As you can see, in all instances, the works claimed in **Exhibits C-F** (hereinafter, "the Copyrighted Works") are registered to Mr. Zacarias and/or Zach Motion Pictures, Inc. and/or Panorama Films S.A., and/or, Producciones Zacarias S.A.[5]

### BMG'S WILLFULL INFRINGEMENT

As you may know, my clients discovered BMG's infringement in the fall of 2021 when YouTube informed their distribution partner, Veranda Entertainment, that BMG was streaming the Work on that platform without authorization under an alternate title. Our understanding is that, following communications between BMG and Veranda, BMG initially refused to remove the infringing material. Indeed, in those communications, BMG indicated that it has been making unauthorized commercial use of the Work since at least 2013, and insisted that its unauthorized use is somehow excused because it licensed the Work from certain third parties. Specifically, BMG asserted that, beginning in 2013, it purportedly licensed the Work from Jim McCullough Entertainment ("JME") and/or Eva Ward—third parties that are unknown to my clients and have no recorded claim with the Copyright Office relating to the Copyrighted Works.

Based on its communications to Veranda, we anticipate BMG will claim it is somehow shielded by its good faith reliance on representations made to it by third parties. But BMG's "good faith" argument is no defense here. For one thing, copyright infringement is a strict liability offense: BMG is responsible for any infringing act regardless of its intent. *See Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 199 (1931); *De Acosta v. Brown*, 146 F.2d 408, 412 (2d Cir. 1944) ("[T]he protection accorded [copyrighted works] would be of little value if it did not go against third persons, or if, it might be added, insulation from payment of damages could be secured by a publisher by merely refraining from making inquiry.").

---

[5] Mr. Zacarias has standing to assert any rights Panorama and/or Producciones Zacarias may have in the Work or Underlying Works; those entities are under his sole direction and control. A declaration affirming my clients' authority to act on behalf of those entities is attached here as **Exhibit G.**

Nor can BMG side-step statutory damages for its willful infringement by claiming "good faith."
As noted above, my clients hold exclusive copyright in the Work, and even the most cursory due
diligence by BMG would have revealed that there exists no chain of title granting *any* rights to JME/Eva
Ward, let alone rights they could unilaterally transfer to BMG. Indeed, we are informed and believe that
some infringing copies of the Work distributed by BMG retain the copyright notice that my clients
included in the credits, which indicates that Panorama Films S.A. owns copyright in the Work. A cursory
search of "Panorama Films S.A." on the Copyright Office website would, in turn, inform anyone with
internet access—let alone a sophisticated global media corporation like BMG that is, presumably, in the
business of licensing/acquiring rights—that Panorama, not JME and/or Eva Ward, owns copyright in the
motion picture entitled *The Life of our Lord Jesus.* Included below is a true and correct screenshot of the
relevant portion of the results for "Panorama Films S.A." on the OPC. The relevant registration is found
at the twentieth result on the first page of the search results.

| | | | | |
|---|---|---|---|---|
| ☐ [ 16 ] | Panorama Films, SA | Nano / director. Gilberto Martinez Solare. | PA000785309 | 1997 |
| ☐ [ 17 ] | Panorama Films, SA | Ni solteros ni casados / productor y director. Alfredo Zacarias. | PA0000883873 | 1997 |
| ☐ [ 18 ] | Panorama Films, SA. | Ni solteros ni casados = That marriage affair / Additional title: Dealiz de casados = Call of the love bird. | V8000P120 | 1996 |
| ☐ [ 19 ] | Panorama Films, SA | Vida de Chucho el Roto = The life of Chucho el Roto. | V8000P224 | 1996 |
| ☐ [ 20 ] | Panorama Films, SA | Vida de nuestro senor = The life of our Lord Jesus. | V8000P221 | 1996 |
| ☐ [ 21 ] | Panorama Films, SA | Yo soy Chucho el Roto / director y productor. Alfredo Zacarias. | PA0000785363 | 1997 |
| ☐ [ 22 ] | Panorama Films, SA. | Yo soy Chucho el Roto = I am Chucho el Roto. | V8000P214 | 1996 |
| ☐ [ 23 ] | Panorama Films, SA de CV | Carolina contra las Monjas / productor & director. Alfredo Zacarias. | PA0000726034 | 1974 |
| ☐ [ 24 ] | Panorama Films, SA de CV | Hermana tringuete / una pelicula de Alfredo Zacharias : direccion. Rene Cardona, Jr. | PA0000959326 | 1970 |
| ☐ [ 25 ] | Panorama Films, SA de CV. | Inolvidable Chucho el Roto = The unforgettable Chucho el Roto. | V8000P217 | 1996 |

BMG's knowing disregard for my clients' rights is further evidenced by its inclusion of patently
false copyright management information on some infringing copies of the Work, which obscures the
infringement from good faith purchasers of those unauthorized copies. For example, an image of the back
cover of the DVD sold on Amazon bears the BMG logo and reads: © *1984 Telefilm Company, Inc., All
Rights Reserved.* And, in at least some infringing versions of the Work, BMG credits a third-party named
"Cathy McCullough Glover" as the producer and director in the Work's credits/titles. But BMG *knew*
this information was false. *First*, there can be no question that BMG was aware of the 1984 Telefilm
registration when it began its infringing acts—after all, it referenced that registration on the infringing
DVD covers. Yet, as previously noted, the OPC record of this 1984 registration reveals, on its face, that
Telefilm was claiming copyright only in the "English dubbed soundtrack," not the Work as a whole. *See*
**Exhibit A**. *Second*, the 1984 registration placed BMG on notice of Telefilm's 1989 transfer of any rights
it *did* have to my client, Zach Motion Pictures. The 1984 registration notes the Work's original English
and Spanish titles Work (*La Vida de Nuestro Senor/The Life of Jesus Christ*), and lists the original owner
(Panorama). All BMG had to do to find a record of the 1989 transfer was search those keywords provided
by the 1984 registration on the Copyright Office website. A true and correct screenshot of the search
results for "Life of Jesus Christ" on the OPC is included below—the eleventh entry on the first page of
results leads to a record of the 1989 transfer, which is also attached here as **Exhibit B**. In short, BMG had
all the relevant information at its fingertips; it cannot elide responsibility by claiming JME and/or Eva
Ward somehow obscured the truth from it.

| | | | |
|---|---|---|---|
| [1] The Life of Jesus Christ | Bible 302 : The life of Jesus Christ / author, Patricia Goss ; editor, Richard W. Wheeler ; revision editor, Alan Christopherson. | TX0004997466 | 1995 |
| [2] The life of Jesus Christ. | Chaos of Jesus Christ. | TXu001172014 | 2003 |
| [3] Life of Jesus Christ. | Jesus nuestro senor / Additional title: Life of Jesus Christ. PA 565-755 (1991) | V3454D242 | 2000 |
| [4] The life of Jesus Christ. | Life of Christ / written by Dorothy Nona Lammers. | TXu000128230 | 1983 |
| [5] Life of Jesus Christ. | Life of Jesus Christ. | TXu002128566 | 2018 |
| [6] Life of Jesus Christ. | Life of Jesus Christ. | VAu000668660 | 2005 |
| [7] The life of Jesus Christ. | Life of Jesus Christ. | PAu001818607 | 1993 |
| [8] Life of Jesus Christ. | Life of Jesus Christ. | V2758P051 | 1992 |
| [9] The life of Jesus Christ. | Life of Jesus Christ. | TXu000530609 | 1992 |
| [10] The life of Jesus Christ | Vida de Nuestra Senor / la produccion de Panorama Films, S.A. ; director, Miguel Zacarias. | PA0000565755 | 1981 |
| [11] Life of Jesus Christ. | Vida de nuestro Senor : a.k.a. The Life of Jesus Christ: motion picture. | V2488P202 | 1989 |
| [12] The Life of Jesus Christ and Biblical revelations | Promised one / by I. Phanuel [pseud. of Louis W. Coscia] | TXu000090619 | 1982 |
| [13] The Life of Jesus Christ and Biblical Revelations | Resurrection of the Christ. | PAu002951317 | 2005 |
| [14] The Life of Jesus Christ as Seen Through His Eyes | Jesus Christ - Through His Eyes. | PAu003633599 | 2012 |
| [15] The Life of Jesus Christ / author, Patricia Goss ; editor, Richard W. Wheeler ; illustrators, Melissa Goss, Olivia Spencer. | Life of Jesus Christ / author, Patricia Goss ; editor, Richard W. Wheeler ; illustrators, Melissa Goss, Olivia Spencer. | TX0000122048 | 1978 |
| [16] The life of Jesus Christ / by American Panorama, Inc. | Life of Jesus Christ / by American Panorama, Inc. | PA0001349890 | 1988 |

In sum, my clients own all rights in the Work, its English dub, and the Underlying Works it incorporates. BMG made unauthorized use of the Work, and it did so knowingly. BMG cannot escape liability now by claiming it could not see evidence of its infringement because it had its head buried in the sand.

## DAMAGES FOR COPYRIGHT INFRINGEMENT

Under federal copyright law, the holder of a copyright has the exclusive right to do, and to authorize, any of the following: use, prepare derivative works based upon, reproduce, distribute, display and perform a copyrighted work. *See* 17 U.S.C. § 106. An infringer of copyright is liable for damages, and may also be responsible for attorneys' fees and costs. *See* 17 U.S.C. §§ 500-505.

BMG has admittedly used/sold/distributed the Work since at least 2013. In short, the infringement is clear. The only remaining question is the extent of damages to be paid. Because my clients registered the copyright to the Work (as well as three of the Underlying Works and the English-dubbed derivative) with the Copyright Office prior to BMG's infringement, *see* **Exhibits C-F**, they may elect either to receive the actual damages caused by and the profits earned from the infringement *or* statutory damages of up to $150,000 for willful infringement for each registered work. *See* 17 U.S.C. §504(b) and (c).

Under copyright law, "willful infringement" has a particular meaning. Courts have repeatedly found that "a finding of 'willfulness' can be based on either 'intentional' behavior, or merely 'reckless' behavior." *See In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). In other words, BMG will be liable for up to $150,000 per work if a court finds that BMG's unauthorized use was done in "reckless disregard" for, or "willful blindness" to, my clients' rights. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). And BMG cannot defeat a finding of willfulness by asserting, in conclusory fashion, that it relied on third-party representations "in good faith." Rather, to refute evidence of willfulness, BMG would have to "not only establish its good faith belief in the innocence of its

5

conduct, [but] *also show that it was reasonable in holding such a belief.*" *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (emphasis added). BMG cannot make such a reasonableness showing here. Not when the evidence BMG itself has relied on (i.e., the 1984 Telefilm copyright registration) is limited, on its face, to rights in the English soundtrack and does not extend to the Work as a whole. Further, it would strain credulity to claim that BMG, a global media corporation, would *not* search the Work's title and the original author listed on the OPC registration before purchasing rights to the Work from a third party. In doing so, BMG would discover that all rights in the Work are registered to my clients and/or their agents: Panorama and Producciones Zacarias.

In sum, even without the benefit of formal discovery and relying only on public information, we are confident that we can establish the willfulness of BMG's conduct in formal litigation, and recover (1) the greater of enhanced statutory damages or actual damages, and (2) attorneys' fees and costs.

## DAMAGES FOR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION

As noted above, my clients posted copyright information in the form of a copyright notice in the Work's credits. In at least some instances of unauthorized distribution (e.g., some streaming versions of the Work and the back jacket of the DVD), BMG removed the copyright management information in violation of 17 U.S.C. §1202(b), which states that:

> No person shall, without the authority of the copyright owner or the law, intentionally remove or alter any copyright management information knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

The damages for violating 17 U.S.C. §1202 alone start at $2,500 and go to $25,000 per violation, in addition to any fines for copyright infringement. *See* 17 U.S.C. §1203(c)(3)(b). My clients are therefore entitled to combined damages: actual or statutory damages for copyright infringement *and* statutory damages for each instance BMG altered the copyright management information.

## NOTICE TO ISSUE LITIGATION HOLD

You are on notice that litigation is likely regarding BMG's actions concerning the Work. BMG is now obligated and has a duty to preserve all evidence that may be relevant to the dispute discussed above and that may be the subject of pending litigation. This duty of preservation extends, but is not limited, to data files, e-mails, calendars, telephone logs, access lists, and logs that are located on computer networks, e-mail servers, mainframes, individual computer workstations, and external drives owned by BMG and/or its agents and/or affiliates.

Specifically, but not exclusively, BMG is on notice that it must preserve all evidence of all of its uses of the Work. This duty extends to BMG's employees and agents. We request that BMG notify its

employees and agents of this retention request immediately. Sanctions for violating any of the foregoing duties can be severe and include substantial monetary sanctions, adverse inferences in evidentiary rulings, and the entry of judgments by default. We remain hopeful that we can resolve this dispute short of litigation. The above duties, however, must be satisfied during any settlement or other discussions that we may have.

### SUMMARY OF CLIENTS' DEMANDS

Based on the foregoing, we demand that BMG:
1. Immediately cease and desist all use of the Work, including but not limited to deleting the Work in its entirety from YouTube, Amazon, and any other streaming platforms, and delisting/discontinuing sale of physical copies of the Work;
2. Return all physical infringing copies of the Work to my clients; and
3. Provide a full accounting of all of BMG's uses of the Work.

### OFFER TO SETTLE CLAIMS

My clients are willing to provide you an opportunity to settle claims against you and end this matter immediately if BMG (1) complies with the above demands, (2) affirms its compliance in a signed affidavit, and agrees, in the same writing, that it will make no future unauthorized use of the Work, and (3) sends certified funds in the amount of $250,000.

Please note that this amount represents an offer of settlement but does not reflect the damages that my clients can and will seek in a court proceeding, including attorneys' fees pursuant to 17 U.S.C. §§ 505 and 1203. Rather, this settlement offer reflects what my clients will accept if no further actions against you are necessary. If you do not accept this offer, my clients reserve the right to seek the maximum available damages under the law, which far exceed the amount above. Please direct your response to me, via email, no later than close of business on **January 12, 2022.**

As you can see, BMG's infringement is clear-cut and evidence of its willful conduct is staggering. Once we proceed to formal litigation, any "settlement events" will be exceedingly unlikely, and we intend to try these facts before a jury. I therefore strongly urge BMG to accept this generous early settlement offer. To wit, please be advised that if you are unwilling to engage in settlement efforts, my clients will initiate formal litigation, and may do so at any time without further notice to you. Further, if you carry business insurance, now may be an appropriate time to contact your carrier to determine whether my clients' claims are covered under your policy. This letter is without prejudice to my clients' rights and claims, which are expressly reserved.

We appreciate your prompt attention this serious matter, and look forward to your timely response.

7